David Coleman et al., Appellees, v. City of Chicago et al., Appellants.

Gen. No. 40,381.

Heard in the third division of this court for the first district at the June term, 1938. ▮▮▮▮ Opinion filed October 26, 1938. Rehearing denied November 9, 1938.

BARNET HODES, Corporation Counsel, for appellants; MARTIN H. FOSS, Assistant Corporation Counsel, of counsel.

BULLAS, GOLDSMITH & RIVIKIN, of Chicago, for appellees; SAMUEL L. BULLAS and HARRY A. GOLDSMITH, of counsel.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

An interlocutory order was entered in the superior court restraining the defendant city of Chicago, its mayor, commissioner of police, and their agents, from interfering with the operation and use by the plaintiffs in the city of Chicago of certain coin operated implements or devices called ''Bowlette,'' ''Roll-a-Ball,'' ''Roll-a-Score,'' ''Skee Ball,'' ''Bowl-a-Ball,'' ''Bally-

roll," "Skee-roll," "Bank-Roll" and "Rock-o-Ball," and it is from that order that this appeal is taken.

It is claimed by the City that the keeping and use of these implements or devices is prohibited by one ordinance, and the keeping for gain or profit from operation is made unlawful by another ordinance of the defendant City.

The complaint was filed by thirteen different plaintiffs, and after referring to the two ordinances which prohibit the use of the devices, states that the plaintiffs are engaged in the business of buying, operating, distributing and leasing the above mentioned devices in the city of Chicago and that plaintiffs have places of business and offices in the City where they receive and store the aforesaid machines and devices and where their various salesmen and other employees solicit various business men in the city of Chicago to grant them permission to lease the aforesaid machines and devices on a profit sharing basis.

The complaint further states that plaintiffs have invested large sums of money as capital for the acquisition of said machines and the maintenance of the aforesaid places of business, including the employment of men who are able to repair and service said machines; that until interfered with plaintiffs enjoyed large profits in their businesses and were developing good prospects for increased business and extension of their profits; that the machines are built along similar lines and in general consist of a framed enclosed horizontal board, or horizontally inclined board of various lengths, similar to a bowling alley, or alley and target area, being covered with carpet and containing at the farthest end an elevation or hump from which balls roll, striking the target area which contains a heavily corded hand woven net. The balls are operated by the individual player and after being deflected from said hump against the aforesaid net, enter the target area, consisting of various target circles made of heavy rub-

berized machine belting and numbered for the purpose of keeping a score which is electrically operated and shown by the indirect lighting score board in the rear. The game is played with 9 wooden balls, each about $3\frac{1}{8}$ inches in diameter which are obtained by the player inserting a coin in the coin chute located at the front of the device which causes the 9 balls to be released for the use of the player. The player takes one ball at a time in his hand and bowls the same individually along the surface of the machine and over the inclined portion of the surface, striking various portions of the aforesaid target area numbered as aforesaid.

The complaint further states that the ultimate location of the ball or balls in the target area is determined by the skill of the player, the chief determining factors being the direction, speed of the ball, and the method or methods of bowling employed by any player or players; that the machines are not operated for gaming purposes; that the amount paid for the use of the machine by the individual player is the nominal sum of 5 cents, and the sole purpose of the game is to create amusement for the player; that in the operation of the machines no wagers or bets are made or taken by the player or players or the proprietor or proprietors of the store where the machines are maintained; that no prize or prizes are given in connection with the operation of said machines; that in the operation of said machine the player employs practically every part of his body and muscle and that great physical benefits are derived from the operation; that the use and operation of the machines do not violate any of the statutes of the State of Illinois or the valid ordinances of the city of Chicago.

Descriptive circulars advertising plaintiffs' devices are attached to the complaint as exhibits.

Plaintiff further alleges that the aforesaid machines are built along similar lines and the exact operation

of each of said machines is more fully set forth and described in the exhibits.

Plaintiff further alleges that the said plaintiff Louis J. Shudow, doing business as Reliable Skee Ball Company, was placed under arrest by the police officers of the city of Chicago, Illinois, on account of operating and maintaining the aforesaid machines in his place of business in Chicago, Illinois, and the said plaintiff has been charged with the violation of section 1893A of the ordinances of the city of Chicago, Illinois; that said police officers have threatened to arrest all of the aforesaid plaintiffs and owners of stores in which said machines are being operated and have threatened to seize, confiscate and destroy all of the aforesaid machines and devices owned by the said plaintiffs and maintained in the aforesaid places of business; that as a result of the aforesaid acts and deeds of the aforesaid police officers, acting under the direction of the aforesaid defendants, the business of the aforesaid plaintiffs in the operation of said machines has been greatly prejudiced, hindered and destroyed, so that it has become almost impossible to place or operate the aforesaid machines in the city of Chicago, Illinois; that by reason of the foregoing illegal acts, threats and doings of said defendants, said plaintiffs have been deprived of profits that they otherwise would have derived from the operation of said machines.

No allegation is made as to what was the outcome of the arrest of the plaintiff Shudow, whether he was taken to court and, if so, the decision of the court.

The ordinance of which the plaintiffs complain and which they allege did not authorize the action of the police officers, reads as follows:

*"Be it Ordained by the City Council of the City of Chicago:*

"Section 1. Chapter 37 of the Revised Chicago Code of 1931 is hereby amended, adding thereto a new

article to be known as ARTICLE IV A, entitled 'BAGA-TELLE AND PIGEON HOLE,' which shall read as follows:

## "ARTICLE IV A.

### "BAGATELLE AND PIGEON HOLE.

"Section:
1949a. Games prohibited.
1949b. Penalty.
1949c. Seizure.

1949a. Games prohibited.)  It shall be unlawful for any person to keep or use in any place of public resort within the city of Chicago any tables or implements for any game of bagatelle or pigeonhole.

"The term 'Bagatelle or Pigeonhole,' as used in this article, shall mean a game played with any number of balls or spheres upon a table or board having holes, pockets or cups into which such balls or spheres may drop or become lodged and having arches, pins, and springs, or any of them, to control, deflect or impede the direction or speed of the balls or spheres put in motion by the player, and shall include the modern variety of Bagatelle or Pigeonhole commonly known as pin games.

"The term 'place of public resort' as used in this article, shall mean any premises wherein any service or merchandise is offered for sale to the public or where tables or implements for playing the game of bagatelle or pigeonhole are kept for gain or profit, or any premises used as a club house or club rooms.

"1949b. Penalty.)  Any person who shall violate the provisions of this article shall be fined not less than ten dollars nor more than two hundred dollars for each offense, and each day that the violation continues shall be regarded as constituting a distinct and separate offense.

"1949c. Seizure.)  It is hereby made the duty of every policeman to seize any table or implement kept

or used in violation of this article and, upon conviction of the keeper thereof, such table or implement so seized shall be destroyed. Any person obstructing or resisting any policeman in the performance of any act authorized by this section shall be fined not less than twenty-five dollars nor more than two hundred dollars for each offense.

"Section 2. An ordinance providing for the licensing and regulation of automatic amusement, vending and weighing machines, passed by the city council on February 1, 1935, and appearing in the journal of the proceedings of the city council of that date at pages 3359-60 is hereby repealed.

"Section 3. This ordinance shall be in force and effect from and after its passage and due publication."

*"Be it Ordained by the City Council of the City of Chicago:*

"Section 1. That Article 1 of Chapter XXXVI of the Revised Chicago Code of 1931, as amended, be and the same hereby is further amended by adding a new section thereto to be known as 1893-A in the words and figures as follows:

" '1893-A. Automatic amusement devices prohibited. It shall be unlawful for any person, firm or corporation to keep, or cause any of his or its agents or employees to keep, for gain or profit from operation, any amusement device the operation of which is governed or controlled by the deposit of a coin or token.'

"Section 2. That Section 1893 of the Revised Chicago Code of 1931, as amended, be and the same hereby is further amended by striking out the period at the end of said section, as amended December 6, 1933, and appearing in the left hand column of page 1216 of the Journal of the Proceedings of the City Council of the last mentioned date, and adding thereto the following: 'excepting amusement devices the operation of which

is governed or controlled by the deposit of a coin or token.'

"Section 3. That section 1894 of the Revised Chicago Code of 1931 be and the same hereby is amended by striking out the first sentence of said section and substituting therefor the following:

" 'No person, firm or corporation, either as owner, lessee, manager, officer or agent, shall give, conduct, produce, present or offer for gain or profit any of the classes of entertainments specified in Section 1893 of this ordinance without first having obtained a license therefor.'

"Section 4. This ordinance shall be in force and effect from and after its passage and due publication."

It is claimed first that the ordinances quoted are invalid and secondly, that they do not pertain to the kind of machines which are owned and operated by plaintiffs.

Without discussing at length the various points raised by counsel for plaintiff, which we do not consider controlling, we call attention to *Levins v. City of Chicago,* 296 Ill. App. 645 (Abst.). The *Levins* case was very similar to the instant case as the machines involved were almost identical, and the ordinances involved were the same. In that case the action of the City in endeavoring to enforce the ordinance was challenged as in this case and while all the language used in the opinion to which we have just referred is not applicable to the case at bar, we quote from that portion of the opinion, which we think in point, which reads: "While it may be that the operation of the two devices may stimulate and encourage gambling and induce children and weakminded adults to gamble and squander their money, in which view, obviously, the ordinance as well as the criminal laws would be violated, yet we think any facts bearing on

such questions should be left to a hearing of the case on its merits. Police and officials and other city officials ought not to be enjoined from enforcing city ordinances except in a clear case.

"We think the order appealed from was improvidently entered and it is reversed."

For the reasons herein given, the order of the superior court granting a temporary injunction as above set forth is hereby reversed.

*Order reversed.*

HALL, P. J., and HEBEL, J., concur.